B 210A (Form 210A) (12/09)

# UNITED STATES BANKRUPTCY COURT

Eastern District of Wisconsin

In re  Renaissant Lafayette, LLC            ,          Case No.  09-38166-pp

## TRANSFER OF CLAIM OTHER THAN FOR SECURITY

A CLAIM HAS BEEN FILED IN THIS CASE or deemed filed under 11 U.S.C. § 1111(a). Transferee hereby gives evidence and notice pursuant to Rule 3001(e)(2), Fed. R. Bankr. P., of the transfer, other than for security, of the claim referenced in this evidence and notice.

| PyraMax Bank, FSB | Lagina Plumbing, Inc. |
|---|---|
| Name of Transferee | Name of Transferor |

Name and Address where notices to transferee should be sent:
 c/o John R. Schreiber, Esq.
 O'Neil, Cannon, Hollman, DeJong & Laing S.C.
 111 E. Wisconsin Ave, Ste 1400, Milwaukee, WI 53202

Court Claim # (if known): ____10____
Amount of Claim: ____$95,144.75____
Date Claim Filed: ____01/27/2010____

Phone:  (414) 276-5000
Last Four Digits of Acct #: _____

Phone: _____
Last Four Digits of Acct. #: _____

Name and Address where transferee payments should be sent (if different from above):

Phone: _____
Last Four Digits of Acct #: _____

I declare under penalty of perjury that the information provided in this notice is true and correct to the best of my knowledge and belief.

By: /s/ John R. Schreiber   John R. Schreiber, Esq.    Date: 09/03/2010
   Transferee/Transferee's Agent

*Penalty for making a false statement:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 & 3571.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

RENAISSANT LAFAYETTE LLC,

Debtor.

Case No. 09-38166-pp

Chapter 11

## ATTACHMENT TO PYRAMAX BANK, FSB'S TRANSFER OF CLAIM OTHER THAN SECURITY

In support of its Transfer of Claim Other Than Security, PyraMax Bank, FSB, by its undersigned attorneys, states as follows:

1. On January 27, 2010, Lagina Plumbing, Inc. ("Lagina") filed with this Court a proof of claim against Renaissant Lafayette, LLC ("the Debtor"). Lagina's unsecured claim is listed with the court as Claim No. 10 and is for the amount of $95,144.75.

2. On March 2, 2010, Lagina entered into a Voluntary Surrender Agreement (the "Agreement") with PyraMax Bank, FSB ("PyraMax").

3. Pursuant to the Agreement, Lagina assigned to PyraMax all or substantially all of its assets, including its rights and interests in and to its claims against the Debtor in this matter.

4. A true and correct copy of the Agreement is attached hereto as **Exhibit 1**.

Dated: September 3, 2010.

By: _/s/ John R. Schreiber_
John R. Schreiber
O'Neil, Cannon, Hollman, DeJong & Laing S.C.
111 East Wisconsin Avenue, Suite 1400
Milwaukee, Wisconsin 53202-4870
414-276-5000
Fax: 414-276-6581
john.schreiber@wilaw.com

Attorneys for PyraMax Bank, FSB

# EXHIBIT 1

## VOLUNTARY SURRENDER AGREEMENT

This Voluntary Surrender Agreement (the "Surrender Agreement") is made and entered into as of this _____ day of March, 2010, by and between LAGINA PLUMBING, INC. (the "Debtor") and PYRAMAX BANK, FSB (the "Lender").

RECITALS:

WHEREAS, the Debtor is obligated to the Lender pursuant to the terms of the following promissory notes (collectively, the "Notes") executed by the Debtor:

- Note No. 5500003539-3 (outstanding balance of $674,698.22 as of 2/9/10);
- Note No. 5500003539-4 (outstanding balance of $503,866.02 as of 2/9/10); and
- Note No. 5500003539-5 (outstanding balance of $50,175.69 as of 2/9/10).

WHEREAS, the Debtor is further obligated to the Lender under various other documents referenced in, contemplated by or executed in conjunction with the above Notes, including without limitation a Commercial Security Agreement dated March 7, 2008, between the Debtor and Lender (the "Security Agreement"), (collectively, the "Loan Documents"); and

WHEREAS, as security for its obligations to the Lender, the Debtor granted a security interest to the Lender in all of the assets (the "Collateral") described in the Security Agreement; and

WHEREAS, the Debtor has expressed its willingness to surrender to the Lender all of the Collateral as more fully described on **Exhibit A** attached hereto (the "Surrendered Collateral"); and

WHEREAS, the parties to this Surrender Agreement wish to set forth their agreements concerning the surrender of the Surrendered Collateral and its sale.

AGREEMENTS:

NOW, THEREFORE, in consideration of the foregoing Recitals and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. Recitals. The Recitals set forth above are true and correct and incorporated herein by reference.

2. Representations, Warranties and Covenants. The Debtor hereby represents, warrants and covenants to the Lender that:

    (a) the execution, delivery and performance of this Surrender Agreement and all ancillary agreements executed in connection herewith have been duly authorized by all necessary action;

    (b) to the best of Debtor's knowledge and belief, there are no secured creditors of the Debtor having an interest in the Collateral except as reflected on the attached **Exhibit B** hereto and Debtor has not granted any liens or security interests in the Collateral since granting those shown on said Exhibit;

1

(c) with respect to any taxes the nonpayment of which could result in the imposition of a lien on any part of the Collateral, to the best of Debtor's knowledge and belief, there are no unfiled tax returns nor unpaid taxes that, as of the date hereof, have resulted in the imposition of any such lien, other than those set forth on **Exhibit B** hereto; and

(d) the Debtor has not dealt with any agent, finder, broker or other representative in any manner as could result in Lender being liable for any fee or commission in connection with the sale of the Surrendered Collateral.

3. Statement of Indebtedness. The Debtor acknowledges that as of the date hereof, the Debtor remains indebted to the Lender for all unpaid principal, together with all interest, both accrued and accruing, and other fees and charges payable under the Notes. Moreover, the Debtor agrees that the Debtor remains liable for all costs and expenses, including, without limitation, those described in Section 9.610 of the Uniform Commercial Code, as adopted in Wisconsin (the "Wisconsin UCC"), and reasonable attorneys' fees the Lender incurs in this matter, as a result of the provisions of the Notes and Loan Documents or applicable law (collectively, the items of principal, interest, both accrued and accruing, costs, expenses and attorneys' fees are referred to herein with respect to the Lender as the "Indebtedness"). The Debtor hereto further agrees and acknowledges that the Indebtedness has not been forgiven, and is a legal, valid and binding obligation of the Debtor, enforceable in accordance with their respective terms.

4. Default. The Debtor further acknowledges and agrees that the Debtor is in default of its obligations to the Lender and that the full amount of the Indebtedness is now due and owing.

5. Surrender. The Debtor hereby turns over, voluntarily surrenders and delivers possession of the Surrendered Collateral to the Lender for subsequent sale by the Lender under Section 9.610 of the Wisconsin UCC. The Lender accepts the voluntary surrender of the Surrendered Collateral, subject to the terms and conditions of this Surrender Agreement. **The Debtor acknowledges and agrees that the Lender has not agreed to retain the Surrendered Collateral in satisfaction of the Indebtedness.**

6. Sale of Collateral and Waiver of Right to Notice and of Redemption. The parties agree that the Lender may dispose of the Surrendered Collateral at one or more times, in whole or in part, or in any other manner deemed reasonable by the Lender, by public or private sale, as long as the totality of the disposition of the Surrendered Collateral is commercially reasonable. The Debtor acknowledges the Lender's right to sell the Surrendered Collateral and each expressly renounces and waives (1) any right to notice as provided by Section 409.613 of the Wisconsin Statutes or any sale thereof, (2) all rights of redemption of the Surrendered Collateral under Section 409.623 of the Wisconsin Statutes.

7. Disposition of Proceeds. The Lender hereby agrees and confirms that the proceeds received by it as a result of any disposition undertaken pursuant to Section 409.610 of the Wisconsin Statutes with respect to the Surrendered Collateral shall be applied first to pay all existing liens in order of priority, including, but not limited to the Indebtedness, and if, as a result of any such disposition, the Indebtedness is paid in full, any excess proceeds will be returned to the Debtor or otherwise disposed of in accordance with the provisions of Section 409.616 of the Wisconsin Statutes.

2

8. Voluntary Agreement. The Debtor acknowledges and agrees that the surrender and renunciation of rights as contemplated herein are voluntary acts and are not made under any duress.

9. Further Assurances. The Debtor further agrees to execute and deliver such other documents and take such other actions and proceedings as the Lender may reasonably deem necessary or appropriate to transfer any or all of the Surrendered Collateral and otherwise effectuate the terms of this Surrender Agreement. The voluntary surrender and renunciation of rights as contemplated herein is a voluntary act of the Debtor and is not made under any duress by any other party.

10. Other Obligations of the Debtor. It is agreed that neither the execution nor performance of this Surrender Agreement by the Lender shall render the Lender liable for any of the debts or obligations of the Debtor to any person.

11. Waiver of Rights. The Debtor acknowledges that the sale of the Surrendered Collateral by the Lender is in lawful enforcement of the Lender's rights under the security agreement which the Debtor has given to the Lender to secure payment of the Indebtedness and, to the full extent permitted by applicable law, the Debtor hereby renounces and waives any and all rights each of them may have pursuant to Sections 409.601 through and including 409.628 of the Wisconsin Statutes, including, but not limited to, all rights of redemption of the Surrendered Collateral, as provided by Section 409.623 of the Wisconsin Statutes.

12. Effect of Agreement. The Debtor agrees that this Surrender Agreement and the surrender provided for herein, do not in any manner nullify, merge, extinguish, satisfy, release, discharge, constitute a novation or otherwise affect the obligations of the Debtor to the Lender, or any security agreements which the Debtor has given to the Lender to secure payment of the Debtor's obligations to the Lender.

13. Limitation of Liability. Neither the Lender nor any of its affiliates, directors, officers, agents, attorneys or employees shall be liable to the Debtor for any action taken, or omitted to be taken, by it or them or any of them under this Surrender Agreement or in connection therewith, except that no person shall be relieved of any liability imposed by law for gross negligence or willful misconduct. No claim may be made by the Debtor against the Lender, or any of its affiliates, directors, officers, employees, attorneys or agents for any special, indirect, consequential or punitive damages in respect of any breach or wrongful conduct (whether the claim is based on contract or tort or duty imposed by law) arising out of or related to the transactions contemplated by this Surrender Agreement or any act, omission or event occurring in connection therewith. The Debtor hereby waives, releases and agrees not to sue upon any claim for any such damages, whether or not accrued and whether or not known or suspected to exist in its favor.

14. Entire Agreement. The terms and conditions stated herein shall constitute the entire and exclusive statement of the terms hereof and shall supersede all prior oral or written statements of any kind made by the parties or their representatives concerning the terms of this Surrender Agreement. All promises or inducements made in connection with the surrender of the Surrendered Collateral are set forth herein. No statement in writing subsequent to the date above which purports to modify or add to the terms and conditions hereof shall be binding unless consented to in writing, which writing makes specific reference to this agreement and is to be signed by all parties hereto.

15. Governing Law. This Surrender Agreement shall be governed by and construed in accordance with the internal laws of the State of Wisconsin, without regard to choice-of-law rules.

16. Counterparts. This Surrender Agreement may be signed in any number of counterparts with the same effect as if the signatures thereto and hereto were upon the same instrument. This agreement may be executed and transmitted by facsimile, and such signatures shall be deemed to be the equivalent of original signatures.

17. Assignment. This Surrender Agreement may not be assigned without the prior written consent of the other parties hereto.

PYRAMAX BANK, FSB

BY: *[signature]*

ITS: Sr. V.P.

LAGINA PLUMBING, INC.

BY: James Lagina

ITS: President

ACKNOWLEDGED AND ACCEPTED
THIS 2 DAY OF MARCH, 2010.

*[signature]*
James J. Lagina, Guarantor

ACKNOWLEDGED AND ACCEPTED
THIS 2 DAY OF MARCH, 2010.

LAGINA PROPERTIES, LLC, Guarantor

*[signature]*
By: James J. Lagina, Member

ACKNOWLEDGED AND ACCEPTED
THIS 2 DAY OF MARCH, 2010.

*[signature]*
Janice E. Lagina, Guarantor

4

# Exhibit A

## SURRENDERED COLLATERAL

Debtor's equipment, fixtures, inventory, documents, general intangibles, accounts, deposit accounts, contract rights, chattel paper, instruments, letter of credit rights and investment property, now oned or hereafter acquired by Debtor, and all additions and accessions to, all spare and repair parts, special tools, equi0metn and replacements for, software used in, all returned or repossessed goods the sale of which gave rise to and all proceeds, supporting obligations, and products of the foregoing wherever located. "Accounts," "Chattel Paper," "Documents," "Equipment," "Fixtures," "General Intangibles," "Goods," "Instruments," and "Inventory" shall have the meanings assigned to such terms in the Uniform Commercial Code in effect in the State of Wisconsin on March 7, 2008.

Exhibit B