UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

_____

In re RENAISSANT LAFAYETTE LLC,   Chapter 11

                              Debtor.   Case No. 09-38166-PP
_____

**DEBTOR'S BRIEF REGARDING CARVE-OUT ISSUES RESERVED AT OCTOBER 27, 2010 HEARING REGARDING THE AMENDED MOTION FOR ENTRY OF (A) AN ORDER (I) APPROVING THE SALE OF SUBSTANTIALLY ALL OF DEBTOR'S ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS PURSUANT TO 11 USC §§ 105(A) AND 363, (II) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES PURSUANT TO 11 USC SECTION 365 AND (III) GRANTING RELATED RELIEF; AND (B) AN ORDER (1) ESTABLISHING SALE PROCEDURES; (II) APPROVING FORM OF ASSET PURCHASE AGREEMENT; (III) SCHEDULING A SALE HEARING IN CONNECTION WITH THE SALE OF THE DEBTOR'S ASSETS PURSUANT TO 11 USC SECTIONS 105(A), 363 AND 365; (IV) SETTING CERTAIN DATES AND DEADLINES IN CONNECTION THEREWITH; AND (V) GRANTING RELATED RELIEF**
_____

Renaissant Lafayette LLC, the debtor-in-possession (the "Debtor"), by its attorneys, hereby submits its Brief in support of the agreement reached between the Debtor and Amalgamated Bank, as the Trustee of Longview Ultra Construction Loan Investment Fund, f/k/a Longview Ultra 1 Construction Loan Investment Fund (the "Bank"), with respect to both the amount and the allocation of the Estate Carve-Out to fund administrative expenses of professionals and priority claims, as well as provide a 10% dividend to allowed general unsecured claims. The Debtor respectfully submits that both the amount and the allocation of the Estate Carve-Out agreed upon by the Bank and the Debtor are appropriate and are not subject to any legal prohibition for the following reasons:

{32071: 015: 00598995.DOC :2 }

1. Since the decision of the First Circuit in *In re SPM Manufacturing Corp.*, 984 F.2d 1305 (1st Cir. 1993), it has become commonplace that secured creditors may use their own property, including proceeds of their collateral, to enter sharing arrangements benefiting other creditors of a bankruptcy estate in order to achieve a useful transaction:

> Because Code provisions governing priorities and distribution of estate property gave the estate no right to share in proceeds from Citizens' secured claim, the bankruptcy court derived no right under those same provisions to order Citizens to pay a portion of its own claim proceeds to the estate.

*Id.* at 1315. The funds to be used to fund the Carve-Out belong to the Bank, not the Chapter 11 estate, and therefore provide benefits to creditors that they would not otherwise receive.

2. The Bank in its brief in support of the Estate Carve-Out has outlined the case law in support of the right of secured creditors to use their own property, including proceeds of any other collateral, to fund sharing arrangements. The Debtor concurs in and adopts that legal analysis, and will not repeat it here. Nonetheless, it is worth noting that the startling aspect of the *SPM* decision when it hit the bankruptcy world, namely that the sharing arrangements in that case bypassed the priority scheme set forth in the Bankruptcy Code, is simply not an issue with the Estate Carve-Out here, which conforms with the priority scheme set forth in the Bankruptcy Code.

3. That said, the priority scheme of the Bankruptcy Code does not govern the right of a secured creditor to enter sharing agreements with other creditors, such as the Estate Carve-Out agreed upon by the Debtor and the Bank in this case:

> The Code does not govern the rights of creditors to transfer or receive nonestate property. While the debtor and the trustee are not allowed to pay nonpriority creditors ahead of priority creditors, … creditors are generally free to do whatever they wish with the bankruptcy dividends they receive, including to share them with other creditors.

*Id*. at 1313 (citation omitted).

4. More recently, Judge Gerber has enunciated reasons why contractual carve-outs should be permitted and are not subject to the "absolute priority rule" applicable with respect to distributions from the Chapter 11 estate itself:

> I conclude that I too should follow the Gifting Doctrine – at least where, as here, the gift comes from secured creditors, there is no doubt as to their secured creditor status, where there are understandable reasons for the gift, where there are no "ulterior, improper ends" (such as the avoidance of taxes), and where the complaining creditor will get no more if the gift had not been made.

*In re DBSD North America, Inc*., 419 B.R. 179, 212 (Bankr. S.D.N.Y. 2009).

5. Each of these elements is satisfied here. The Estate Carve-Out comes from the Bank as a secured creditor. There has been no doubt raised as to the secured creditor status of the Bank. There are understandable reasons for the sharing, inasmuch as the pending sale of the Park Lafayette condominium project needs to be facilitated by paying basic costs of the Chapter 11 process. No "ulterior, improper ends" have been suggested by anyone. And finally, there is no prejudice to anyone: neither the Official Committee of Unsecured Creditors, its counsel nor any other creditor would receive more if the Carve-Out had not been made available.

6. At the hearing on October 27, 2010 regarding the Sale Motion, there was a colloquy pertaining to so-called "*sub rosa*" plans, which may (or may not) presage an objection to the sale based upon the slender – and now largely abandoned – authority for

prohibiting sales under circumstances where they may be viewed as supplanting the role of a Chapter 11 plan.

7. The Debtor submits that former Judge Eisenberg of this District had it right twenty years ago when he embraced the rule set forth by the Sixth Circuit to the effect that a sale can be authorized "when a sound business purpose dictates such action." *In re Engineering Products Co., Inc.*, 121 B.R. 246, 248 (Bankr. E.D. Wis. 1990), *quoting Stephens Industries, Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986). This reasoning is echoed in the recent decision by the Second Circuit in *In re Chrysler LLC*, 576 F.3d 108 (2d Cir. 2009), approving the sale of Chrysler on the ground that it was "[c]onsistent with [the] underlying purpose of the Bankruptcy Code – maximizing the value of the bankrupt estate... ." *Id.* at 119, *citing Toibb v. Radloff*, 501 U.S. 157, 163, 111 S. Ct. 2197, 115 L. Ed. 2d 145 (1991) (Chapter 11 "embodies the general [Bankruptcy] Code policy of maximizing the value of the bankruptcy estate.").

8. Interestingly, the *Chrysler* decision also noted that the term "*sub rosa*" is not helpful:

> The term '*sub rosa*' is something of a misnomer. It bespeaks a covert or secret activity, whereas secrecy has nothing to do with a § 363 transaction. Transactions blessed by the bankruptcy courts are openly presented, considered, approved and implemented.

*Id.* at 117 (emphasis in original).

9. Here, it is clear that: (i) the presently contemplated sale is open and above board; and (ii) the sale will maximize the value of this Chapter 11 estate for the benefit of all creditors. The sale process has been sought for sound business reasons. It will maximize the estate by allowing the condominium project to be sold expeditiously at its

market value for the benefit of the Bank. In exchange, the Bank and the Debtor have agreed to an Estate Carve-Out under which the Bank will fund reasonable distributions to other creditors, most of whom likely would otherwise receive nothing. Both the amount and the allocation of the Estate Carve-Out are reasonable. The Carve-Out serves to benefit creditors, and it represents the reasonable business judgment of the Debtor.

Dated this 3rd day of November, 2010.

Meltzer Purtill & Stelle LLC  
300 South Wacker Drive  
Suite 3500  
Chicago, Illinois 60606  
312-987-9900 (phone)  
312-987-9854 (fax)  
flammiman@mpslaw.com  
dkane@mpslaw.com  
srogovin@mpslaw.com  

Forrest B. Lammiman  
WI State Bar ID No. 1001512  

BY /s/ Forrest B. Lammiman  
    Attorneys for Renaissant Lafayette LLC