UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

Court Minutes

CHAPTER: 11
DATE: December 15, 2010
JUDGE: Pamela Pepper
CASE NO.: 2009-38166
DEBTOR: Renaissant Lafayette, LLC
ADV. NO.:
ADV.:

| | |
|---|---|
| NATURE OF HEARING: | First Application for Compensation for Meltzer, Purtill and Stelle |
| APPEARANCES: | Forrest Lammiman - Attorney for the DIP |
| | Peter Blain - Attorney for Amalgamated Bank |
| | Debra Schneider - Attorney for U.S. Trustee |
| | Albert Solocheck - Attorney for unsecured creditors' committee |
| LAW CLERK: | Camille Bent |
| TIME: | 2:04 p.m. - 4:25 p.m. |
| ADJOURNED DATE: | Thursday, December 23, 2010 at 9:00 a.m. in room 149 |

The Court noted that it had reviewed the application for compensation, as well as the objections filed by the unsecured creditor's committee and by the United States Trustee. The Court first addressed the objection posed by both objecting parties as to the hourly rate of Attorney Lammiman. The Court considered the objectors' arguments that the rate exceeded that of experienced Chapter 11 counsel in the Wisconsin area and that there were other partners at Attorney Lammiman's firm who billed at lower rates. The Court overruled both objections to the hourly rate, concluding that while it was much higher than that of experienced Wisconsin counsel, it was reasonable for Attorney Lammiman's geographic area, and it was not appropriate to punish the DIP for having hired counsel from another geographic area. In addition, the Court concluded that the DIP had hired Mr. Lammiman's firm to obtain his expertise, and therefore he was the appropriate partner to have performed much of the billable work.

The Court then turned to the more specific objections the objectors had raised to particular categories of billable items, as well as to the committee's argument that the firm's work had yielded no benefit to the estate. To make a determination on these issues, the Court asked Attorney Lammiman to take the stand. After the Court put Attorney Lammiman under oath, counsel for the committee, counsel for the U.S. Trustee, and counsel for Amalgamated Bank all questioned him.

At the conclusion of Mr. Lammiman's testimony, the Court overruled all of the objections to the application for compensation. The Court noted that it was approving an interim application for compensation, agreeing with counsel for the

1

U.S. Trustee that the fees were subject to recoupment if later developments warranted or required such action. The Court agreed with the objecting parties that the way the firm had categorized the itemized bill was, in several cases, misleading, leading to the appearance that the firm was billing for work that should have been performed by the DIP itself. For example, the firm had a category of billings for "business operations." While this category sounded as if it related to the day-to-day running of the business–which should have been conducted by the DIP–the Court concluded, after reviewing the individual billings and hearing Mr. Lammiman's testimony, that many of the entries in this category related to the DIP's efforts to resolve objections from the escrow creditors regarding the mechanics of having the escrowed funds returned to them. Similarly, billings which appeared to be for the preparation of monthly operating reports–a task assigned to the DIP–were, according to Mr. Lammiman, actually for the attorney to review those reports and make sure they did not contain any errors. The firm put some items under the category "contested matters," and the Court acknowledged that the DIP had been involved in only one adversary. The Court noted, however, that that category appeared to include any court appearance on any matter, and that the court appearances listed had, in fact, been made. The firm had a category for "plan and disclosure statement," and the Court acknowledged that there never had been either a plan or a disclosure statement in this case. The Court noted, however, that at one point the DIP had considered preparing a plan, and that this category, like the others, contained items that, while they accurately reflected work that was performed, didn't really seem to fit the category.

      The Court concluded that, despite the inartful designation of various billed items to certain categories (categories which, Mr. Lammiman testified, were suggested by the American Bankruptcy Institute and adopted by his firm), the evidence demonstrated that the firm had done the work listed in the itemized billings.

      As to the committee's argument that the firm's work had yielded no benefit to the estate, the Court disagreed. The Court noted that at the time the DIP had filed its petition, there had been a state-court proceeding underway. Had that state-court proceeding been allowed to proceed to conclusion, the unsecured creditors would have been completely out of the money. The DIP–at the advice of Mr. Lammiman's firm–opted to move the case to bankruptcy court–a decision Amalgamated Bank (admittedly the largest beneficiary of the proposed §363 sale) initially resisted. The DIP's decision to move the case to bankruptcy court likely will result in payment to the unsecured creditors which they would not have otherwise received. It likely will result in payment to the secured creditor–also a relevant "estate" player. It likely will result in payment of the creditors holding valid, perfected mechanics' liens. The Court conceded that Mr. Lammiman's testimony demonstrated that, in spite of the parties' efforts to find a stalking horse,

and later to find a bidder who could exceed Amalgamated's credit bid, the result of the auction had been that Amalgamated's credit bid was the highest qualified bid. Nonetheless, the Court observed, the unsecured creditors, the lienholders, the escrow creditors and the bank all stood to benefit from the work of the firm–some of those stakeholders stood to benefit more than they would have had the case concluded in state court.

Counsel for the U.S. Trustee expressed concern that the fees requested in the first interim application already exceeded the original proposed carve-out for administrative claims (which had been $200,000), and the case was not yet finished. Mr. Lammiman testified that since the parties last had been in court, the bank had agreed to increase the carve-out to $250,000, and that it was possible that his firm's final fees would exceed that amount. Counsel for the U.S. Trustee stated that she was concerned that at the rate things were going, the firm's fees could easily exceed $250,000. The Court agreed with this concern, and indicated that it's decision today did not foreshadow how it might rule on future fee applications.

Thus, while acknowledging that the fees requested were substantial, the Court overruled the objections of the unsecured creditors' committee and the U.S. Trustee, and approved the first interim application for compensation. Attorney Lammiman will upload the proposed order.

The Court briefly discussed with the parties the fact that the DIP had filed some 19 or 20 motions to compromise claims with the escrow creditors and to compromise Interforum's objection to the sale. The DIP had given an objection deadline of December 20 for those motions, and a hearing date of December 23. Counsel for the U.S. Trustee asked to have until December 22 to object, given the short amount of notice and the fact that she was scheduled to be out of the office the 20th and 21st. Counsel for the DIP agreed to accept the U.S. Trustee's objection (if any) to those motions the afternoon of December 22 (mid-afternoon). Counsel for the committee asked if the Court would schedule the hearing on the motions to compromise and the proposed resolution of the Interforum motion for 9:00 a.m. on the 23rd (an hour before the sale hearing), given that he had travel plans. None of the other counsel present objected. Counsel for the U.S. Trustee noted that the DIP had made an error in the notice of the hearing, stated that the hearing was scheduled for *Wednesday*, December 23, when December 23 was a Thursday. Accordingly, she noted, some interested parties might be confused as to whether the hearing was scheduled for Wednesday, December 22 or Thursday, December 23. Counsel for the DIP stated that he would send out an amended notice clarifying that the hearing was scheduled for *Thursday, December 23*, and that the motions to compromise and the Interforum issue would be heard at 9:00 a.m., and the hearing to approve the sale would take place at 10:00 a.m.