UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

Court Minutes

CHAPTER: 11
DATE: December 23, 2010
JUDGE: Pamela Pepper
CASE NO.: 2009-38166
DEBTOR: Renaissant Lafayette, LLC.
ADV. NO.:
ADV.:

NATURE OF HEARING: (1) Motions to Compromise with Escrow Creditors
(2) Motion to Compromise with Interforum Entities
(3) Motion for Entry of an Order Approving Sale Pursuant to §§105(a) and 363
APPEARANCES: Forrest Lammiman - Attorney for the DIP
Peter Blain - Attorney for Amalgamated Bank
L. Katie Mason - Attorney for Amalgamated Bank
Albert Solocheck - Attorney for the unsecured creditors' committee
Jason Pilmaier - Attorney for the unsecured creditors' committee
Cornelius Brown - Attorney for Interforum entities
Debra Schneider - Attorney for the U.S. Trustee
Gregory Erchull - Attorney for escrow creditors
Benjamin Stern - Attorney for escrow creditors
Perry Friesler - Attorney for Matthew Johnson
Thomas LaFave - Attorney for the Hallorans
Richard Porter - Attorney for the Rassoulis
Todd Nelson - Attorney for unit owners & Russell Burmeister
Jonathan J. Strasburg - Attorney for Pobereznys & Mathsons
James T. Freel - Senior Vice-President, Amalgamated Bank
Patrick T. Gillan - Senior Vice-President, Houlihan Lokey
LAW CLERK: Camille Bent
TIME: 9:06 a.m. - 12:25 p.m.
ADJOURNED DATE: **Monday, January 24, 2010 at 2:00 p.m., by telephone**
_____

(1)   Motions to Compromise with Escrow Creditors

The Court indicated that it had reviewed the DIP's twenty-one motions to compromise with various escrow creditors, and noted that the motions appeared to be relatively similar in substance, with the exception of dollar amounts and unit descriptions. The Court observed that the Committee was the only party which had objected to the motions. Counsel for the bank indicated that he had filed a response to the Committee's objection late yesterday evening, and had spoken with counsel for the Committee shortly after. He asked to apologize to counsel for the Committee for any language in the response that might have appeared personal, and asked the

1

Case 09-38166-pp    Doc 286    Filed 12/27/10    Page 1 of 5

Court to attribute any such language to zealous advocacy in the heat of battle. Counsel for the Committee graciously acknowledged counsel's apology.

Counsel for the DIP asked that the Court grant the motions. He argued that the money which the motions proposed to return to the escrow creditors did not belong to the DIP or to the estate, but to the creditors who'd placed them in escrow. He added that the compromises between the parties met the reasonableness standard of Fed. R. Bankr. P. 9019. Counsel for the bank added that as stalking horse bidder, the bank did not designate the contracts with the escrow creditors as contracts to be assumed, and that the bank had anticipated that those contracts would be rejected in due course. Counsel for the bank agreed with counsel for the DIP that the compromises met the reasonableness standard. Counsel for the U.S. Trustee did not take a position on the motions.

Counsel for the Committee argued that the motions did not provide a detailed analysis about whether the funds were or were not in fact property of the estate. He argued that the Court did not know whether the funds were retained in a true escrow account, whether they were commingled, or whether any of the escrow creditors had breached their respective agreements, such that they were not entitled to return of the funds. He indicated that he was performing his fiduciary duty as counsel for the Court-appointed Committee for the unsecured creditors, in an attempt to maximize the assets of the estate. He added that the Court should not rush to approve these motions when the funds had sat untouched for over a year. Further, he argued that the Court did not need to rule on the motions in order to approve the sale.

The Court responded that the motions did impact the sale, because if the DIP and the bank did not resolve the concerns of the escrow creditors, those creditors would object to–and possibly crater–the motion to approve the sale.

Attorney Stern, on behalf of one group of escrow creditors, argued that when the cases were in state court, the state court judge had decided not to consolidate the cases because each had nuances that were better addressed separately. He argued that if the Court did not approve the motions to compromise, the DIP would have to litigate the cases in 17 different fora, with the cost that litigation would entail. He added that the escrow creditors had received IRS 1099 forms over the past few years, providing evidence that the DIP considered the funds to belong to the escrow creditors, and that there was an impossibility of performance on the DIP's part, because it had leased many of the units. Attorney Friesler, representing creditor Johnson, seconded Attorney Stern's comments. Attorney Porter, representing the Rassoulis, noted that he had filed a letter with the Court indicating that the funds were not property of the estate.

2

The Court noted that the governing case law provided that the decision to approve a Rule 9019 motion to compromise fell within the discretion of the bankruptcy court, and that the Court needed to decide only whether the compromises fell within the realm of reasonableness. The factors the Court considered included: the likelihood that the claims would go to litigation; the cost of such litigation; and whether the compromise was negotiated in good faith. The Court noted that it was not required under the law to determine with certainty what the outcome of any litigation would have been – in this case, whether it would have concluded that the escrow funds were, in fact, property of the estate. Rather, the Court indicated, the appropriate task was to weigh the cost and time of litigation against settling. For the reasons provided on the record, the Court ruled that the compromises in all 21 cases were reasonable. The Court granted the twenty-one motions to compromise. Attorney Lammiman will prepare the orders.

(2)     Motion to Compromise with Interforum Entities

The Court noted that the Interforum entities had filed a motion to dismiss the case, arguing that the DIP did not have the authority to file the petition. The DIP filed an objection, and the Court had scheduled a hearing on the motion to dismiss. The Court subsequently canceled the hearing at the request of the parties, because they indicated that they had reached a settlement. The DIP filed a motion to compromise indicating that the Interforum entities would withdraw their motion to dismiss and concede that they were no longer members of the DIP, and the DIP would not pursue any litigation regarding $500,000 transferred to the Interforum entities at the time that Interforum Holdings-Lafayette withdrew as a member. The Court observed that the Interforum entities also had filed an objection to the proposed sale.

Counsel for the DIP confirmed that his client had reached an agreement with the Interforum entities. He added that if the Court approved the agreement, the Interforum entities would be deemed to have withdrawn from any ownership of the DIP as of February 2009, the entities would withdraw the motion to dismiss and their objection to the sale, the Interforum entities would have no standing in the Chapter 11 case, and all claims pertaining to this matter would be released. Counsel for the U.S. Trustee indicated that she did not take a position on the compromise. Counsel for the bank noted that his client supported the compromise and that it was in the realm of reasonableness.

Counsel for the Committee argued that the agreement effectively released a preference claim of $500,000, but that the DIP had provided no real analysis of the claim. Counsel for the Interforum entities argued that the $500,000 was consideration for Interforum Holdings-Lafayette to withdraw as an owner. He stated that if the Court concluded that the $500,000 was not consideration for that

3

withdrawal, then Interforum Holdings-Lafayette remained a 50% owner of the DIP, which returned everyone to the argument that Interforum did not consent to the filing of the petition. If, on the other hand, it was consideration for the withdrawal, then it was not a preference, but an exchange for new value.

The Court indicated that it understood the Committee's concerns regarding the possible argument that the $500,000 might constitute a recoverable preference, but that given the litigation costs and the other considerations stated on the record, it did not think there were grounds for denying the motion to compromise with the Inteforum entities. Accordingly, the Court overruled the Committee's objection, and granted the motion to compromise. Attorney Lammiman will prepare the order, and will include language indicating that the Interforum entities have withdrawn the motion to dismiss and the objection to the sale.

3. <u>Motion for Entry of an Order Approving Sale Pursuant to §§105(a) and 363</u>

Counsel for the bank offered the testimony of Thomas Freel, Senior Vice-President of Amalgamated Bank, and Patrick Thomas Gillan, Senior Vice-President of Houlihan Lokey. Following the testimony, the Court heard arguments from counsels for the DIP and the bank in favor of the sale, and from counsel for the Committee against the sale. The DIP and the bank argued that while both had hoped to find a qualified bidder who could submit a bid higher than the bank's $55 million dollar stalking-horse bid, their hopes had not been realized. This was not due to any lack of effort to market the assets–Mr. Gillan testified as to the extensive efforts he had made to market the assets, both nationally and locally, to institutional investors. Several interested entities submitted bids, but the highest bid other than the bank's was $48 million, some $7 million less than the bank's credit bid. Mr. Gillan had testified that some bidders indicated that they might be able to go a little higher, but no one proposed anything near the bank's credit bid. The Committee argued that the sale was not conducted in good faith, and that it actually was a *sub rosa* plan. The Committee asserted that the bank had settled litigation with Hunzinger Construction, one of the mechanic's lien creditors, and had not revealed the terms of that settlement. The Committee felt that had the DIP conducted the sale via a plan, it would have known the terms of the Hunzinger settlement, and could have evaluated whether the Hunzinger creditors were being treated differently than all other creditors. The Committee acknowledged that had the matter remained in state court foreclosure proceedings, rather than coming to bankruptcy court, the committee likely would have received no dividend, compared with the 10% carve-out proposed in bankruptcy court. But the Committee argued that because the case had not remained in state court, that point was not relevant, and the Court should not approve a sale where the bank had not been willing to consider increasing the Committee's dividend, or negotiating with the Committee over that dividend.

The Court overruled the Committee's objection. The Court stated that it found absolutely no evidence that the DIP or the bank acted in bad faith. It noted that the settlement between Hunzinger and the bank was between a creditor and another creditor–the DIP was not a party to that settlement. The Court further noted that any other creditor could have done what Hunzinger did, and timely filed an adversary action seeking more than the 10% recovery provided for in the carve-out. The Court found that it was relevant that the Committee would have received nothing in state court, and noted that the bank did not have to provide any carve-out of its collateral for the Committee (although it would have faced a strong objection from the U.S. Trustee had it not done so). The Court stated that it was surprised that as many entities bid as did, given the state of the Milwaukee real estate market, and that while it was unfortunate that no qualified bidder could top the credit bid, it was not shocking. The Court noted that, while the Committee was of the view that had the DIP waited longer, the commercial real estate market would have improved even more, it was not clear that this was the case. In short, the Court found that the DIP had exercised reasonable business judgment in conducting the sale, that the sale was conducted in good faith, and that there was no reason not to approve it. Accordingly, the Court granted the motion to approve the sale. Attorney Lammiman will prepare the order.

The Court confirmed that it had granted the motions to limit notice, and asked Attorney Lammiman to submit orders regarding those motions. The UST asked that what the next steps would be–did the DIP plan to file a motion to dismiss the case, or a plan for distributing the proceeds? Counsel for the bank indicated that closing was set to occur sometime in mid-January, and the parties indicated that they would have a better idea of how they next wanted to proceed once the sale had closed. Accordingly, the Court scheduled a status hearing for **Monday, January 24, 2010, at 2:00 p.m. by telephone**.